**Andre D. MUHAMMAD, 91A9944, et al., Plaintiffs,**

**v.**

**Imam WARITHU–DEEN UMAR, et al., Defendants.**

**No. 93–CV–968A(H).**

United States District Court, W.D. New York.

April 18, 2000.

338

Andre D. Muhammad, New York City, pro se.

William X. Allen, Attica, NY, pro se.

Andre X. Horn, Warwick, NY, pro se.

Russell X. McGee, Attica, NY, pro se.

William Lonergan, Office of Attorney General, Patrick O. McCormack, Assistant Attorney General, Buffalo, NY, for Defendants.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1)(B), on May 22, 1998. On March 21, 2000, Magistrate Judge Heckman filed a Report and Recommendation, recommending that plaintiff's motion for summary judgment should be denied and defendants' motion for summary judgment should be granted.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, Plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted. The Clerk of Court is hereby ordered to enter judgment in favor of defendants and to take all steps necessary to close the case.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b)(1)(B). All parties have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, plaintiffs' motion should be denied, and defendants' motion should be granted.

### *BACKGROUND*

The following facts are not disputed.[1] Plaintiffs commenced this action on December 6, 1993. At the time, the plaintiffs were inmates in the custody of the New York State Department of Correctional Services ("DOCS"), and members of the Nation of Islam ("NOI"). Defendant Warithu–Deen Umar is DOCS' Ministerial Program Coordinator. Defendant Abdul Najeeuallah is a Muslin Chaplin (or "Imam") employed by DOCS. Defendant J.L. Mowery is a Rabbi employed by DOCS.

Plaintiffs seek injunctive relief and damages under 42 U.S.C. § 1983 based on alleged violations of their constitutional

---

**1.** Plaintiffs have not responded to defendant's summary judgment motion. Fed.R.Civ.P. 56(e) provides as follows:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In addition, defendant has submitted a "Statement of Facts" pursuant to Rule 56 of the Local Rules of Civil Procedure for the Western District of New York (Item 22). Under Local Rule 56, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."

rights to free exercise of their religious beliefs. Specifically, in their Second Amended Complaint[2] plaintiffs claim that they have been denied access to DOCS' kosher food program for observance of NOI dietary laws, access to a classroom (or "mosque") for Islamic classes, and inclusion of NOI materials in prison radio and video religious programming. In the prayer for relief, plaintiffs seek an order directing defendants to provide these (and other) services, directing DOCS to hire an NOI member (specifically, plaintiff Andre D. Muhammad) as and inmate clerk to conduct NOI affairs, and awarding plaintiff Andre D. Muhammad $250,000 in compensatory damages. *See* Second Amended Complaint, Item 26, pp 8–9; *see also Muhammad v. Coughlin,* 1998 WL 950984 (W.D.N.Y. November 13, 1998).

On January 5, 1995, subsequent to the commencement of this action, a Stipulation and Order was entered by Hon. Loretta A. Preska, United States District Judge for the Southern District of New York, in the case of *Muhammad v. Coughlin,* No. 91–CIV–6333 (S.D.N.Y.1995) (attached as Ex. B to Item 63), settling a class action suit brought by NOI inmates which addressed claims similar to those brought by the plaintiffs in this case. The Stipulation and Order identifies the class as "all persons who have been, are, or will be incarcerated in a correctional facility administered by the State of New York or its agencies or instrumentalities, and who are or become members of the Nation of Islam faith ...," and provides that "[a]ll of the terms of [the] Stipulation and Order, and all references to the plaintiffs, shall apply to all members of the plaintiff class unless otherwise stated" (*id.,* ¶ 1(A)(c)).

· On October 15, 1999, plaintiff Andre D. Muhammad moved for summary judgment on the ground "that plaintiff and class will succeed on the merits" (Item 57, Muhammad Affirmation, p. 2). On December 28, 1999, defendants filed a cross-motion for summary judgment (Item 60), based on the following grounds:

1. Plaintiffs' claims in this case are precluded by the terms of Judge Preska's settlement order in the Southern District litigation.

2. · Failure to demonstrate a constitutional violation based on DOCS' policy of denying NOI followers the same kosher diet provided to Jewish inmates.

3. Lack of protected liberty interest in a particular job assignment.

4. Lack of personal involvement by the remaining defendants (Umar, Najeeuallah, and Mowery).

5. Qualified immunity.

Each of these grounds is discussed in turn below.

## DISCUSSION

### 1. Preclusive Effect of Southern District Settlement.

Defendants contend that the stipulated settlement order signed by Judge Preska in the Southern District class action *Muhammad v. Coughlin* precludes plaintiffs' from relitigating the same issues in this case. I agree. Class actions are predicated on the notion that the interests of all class members are fully represented through the class representatives and through class counsel. It is as if each sues individually in a consolidated action. All party-members, including absent members and future members, are equally bound by

---

2. On March 31, 1998, Judge Arcara dismissed plaintiffs' original and first amended complaint against defendants Mario Cuomo and Thomas Coughlin for lack of personal involvement in the alleged constitutional violations (*see* Item 25). The dismissal was without prejudice to allow plaintiffs the opportunity to file a Second Amended Complaint alleging

facts sufficient to demonstrate personal involvement by defendants Moore, Umar, Najeeuallah and/or Mowery (*id.*). Subsequently, on November 10, 1998, Judge Arcara adopted this court's recommendation that the claims against defendants Coughlin and Moore be dismissed for lack of personal involvement (Item 45).

the strictures of the class action judgment. *See, e.g., County of Suffolk v. Long Island Lighting Co.,* 14 F.Supp.2d 260, 266 (E.D.N.Y.1998); *In re Joint Eastern & Southern Districts Asbestos Litigation,* 878 F.Supp. 473 (E.D.N.Y.1995); *In re Agent Orange Product Liability Litigation,* 597 F.Supp. 740 (E.D.N.Y.1984); *see also Hansberry v. Lee,* 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (judgment in class action is *res judicata* as to members of the class who are not formal parties to the suit).

As the Supreme Court has stated:

[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation. Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply. A judgment in favor of the plaintiff class extinguishes their claim, which merges into the judgment granting relief. A judgment in favor of the defendant extinguishes the claim, barring a subsequent action on that claim. A judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment.

*Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 874, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) (citing *Supreme Tribe of Ben-Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); Restatement of Judgments § 86 (1942); Restatement (Second) of Judgments § 41(1)(e) (1982); Fed.R.Civ.P. 23(c)(3); Moore & Cohn, *Federal Class Actions—Jurisdiction and Effect of Judgments,* 32 Ill.L.Rev. 555 (1938)). Therefore, to determine the preclusive effect of Judge Preska's order in the *Muhammad v. Coughlin* case on the claims asserted by plaintiffs here, the court turns to an examination of the applicability of the doctrines of res judicata and collateral estoppel.

### a. Res Judicata.

Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Federated Dept. Stores Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *see also Prime Management Co., Inc. v. Steinegger,* 904 F.2d 811, 815 (2d Cir.1990); *Feuerman v. Sears, Roebuck and Co.,* 1996 WL 648966, at *5 (S.D.N.Y. November 6, 1996). To establish that a claim is barred by the doctrine of res judicata, a defendant must show that (1) the court rendered a final judgment on the merits in the prior case, (2) the prior suit involved the same parties or their privies, and (3) the causes of action in the subsequent suit are "integrally related" to the claims determined in the prior action. *Feuerman, supra; Carlin v. Gold Hawk Joint Venture,* 778 F.Supp. 686, 691 (S.D.N.Y.1991); *G & T Terminal Packaging Co. v. Consolidated Rail Corp.,* 719 F.Supp. 153, 157 (S.D.N.Y.1989).

It is not disputed that the stipulated order of settlement in the Southern District action constitutes a final judgment on the merits. *See, e.g., Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1120 (S.D.N.Y.1986), *aff'd,* 822 F.2d 14 (2d Cir. 1987) (decree of settlement constitutes judgment on the merits, and will be given full res judicata effect in subsequent suit between same parties on same causes of action as those compromised in settlement). It is also undisputed that, as members of the plaintiff class, the plaintiffs in this case were parties to the Southern District action. Plaintiffs were in DOCS' custody prior to January 5, 1995 (the date Judge Preska signed the settlement order). There is no question that they each received adequate notice of the Southern District class action (*see* Item 63, Ex. B, ¶¶ F–I), or that they were fairly and adequately represented by representative plaintiffs and counsel in that case (*see id.,* ¶ E(iv)). No evidence has been presented

to show or suggest that any of the plaintiffs in this case opted out of the Southern District class, or voiced any objection to the terms of the negotiated settlement.

Accordingly, the only question to be reached in order to determine the res judicata effect of Judge Preska's order is whether the claims in the prior and successive actions are "integrally related." To make this determination, the court must consider three factors: (1) whether the same transaction or connected series of transactions is at issue, (2) whether the same evidence is needed to support both claims, and (3) whether the facts essential to the second action were presented in the first. *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir.1983); *G & T Terminal Packaging, supra*, 719 F.Supp. at 158.

The stipulated order of settlement entered in *Muhammad v. Coughlin* explicitly addressed the following system-wide issues:

1.  Books, publications and other materials which NOI members need to possess in order to practice their religion (Item 63, Ex. B, ¶¶ P(3) & P(4)).

2.  Visits with spiritual advisors, including NOI Ministers (*id.*, ¶ P(5)).

3.  Attendance of NOI Ministers at meetings or classes up to once a week, and provision of facility space for classes and meetings (*id.*, ¶¶ P(6) & P(7)).

4.  Hiring of additional NOI Ministers in accordance with member population and other considerations given to hiring religious leaders of similarly situated groups (*id.*, ¶¶ P(8) & P(9)).

5.  Observance of December fast, "Saviors Day" and "Founders Day" (*id.*, ¶ P(10)).

6.  Handling of grievances and disciplinary proceedings relating to NOI members' practice of religion in the prison system (*id.*, ¶¶ P(11), (12) & (14)).

In their "Prayer for Relief" in this case, plaintiffs seek "permanent injunctive relief ordering defendants" to take the following system-wide action:

1.  Hiring three more NOI Ministers (Item 26, p. 9, "Prayer for Relief" ¶ C(1)).

2.  Allowing access to religious services by NOI inmate student Ministers (*id.*, ¶ C(2)).

3.  Recognition of "Saviors Day" and "Founders Day" (*id.*, ¶¶ C(3) & C(6)).

4.  Designating classroom space for viewing NOI videos (*id.*, ¶ C(4)).

5.  Allowing NOI members to possess religious items (*id.*, ¶ C(5)).

Upon comparison, it is clear that the claims set forth at ¶¶ C(1) through C(6) of plaintiffs' "Prayer for Relief" in the Second Amended Complaint were fully and fairly presented, and finally adjudicated, in the Southern District class action. These claims, seeking implementation of NOI religious programs on a system-wide basis, all necessarily involve the same transactions, the same evidence, and the same essential facts. Plaintiffs are therefore bound by the stipulated settlement order in *Muhammad v. Coughlin*, and are barred by principles of res judicata from relitigating those same claims in this case.

### b. Collateral Estoppel.

Collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment. *See Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995); *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir.1991) (per curiam), *cert. denied sub nom. Levy v. Martin*, 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992). Four elements must be met for collateral estoppel to apply: (1) the issues of both

proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been "full and fair opportunity" for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits. *Central Hudson Gas & Electric, supra; see also Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir. 1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987).

■ Once again, comparison of the issues determined as a result of the settlement order in the Southern District class action and the claims set forth at ¶¶ C(1)-(6) in plaintiffs' "Prayer for Relief" in the Second Amended Complaint leads this court to conclude that plaintiffs are barred by principles of collateral estoppel from relitigating those claims in this case. The issues in both proceedings are identical, the relevant issues were actually litigated and decided in the prior proceeding, there was a "full and fair opportunity" for the litigation of the issues in the prior proceeding, and the issues were necessary to support a valid and final judgment on the merits.

Accordingly, I find that the stipulated order of settlement signed by Judge Preska in *Muhammad v. Coughlin,* No. 91-CIV-6333 (S.D.N.Y. January 5, 1995), should be given preclusive effect in this case, barring plaintiffs' claims as set forth at ¶¶ C(1)-(6) of plaintiffs' "Prayer for Relief" in the Second Amended Complaint.

In addition to these precluded claims, plaintiffs also seek access to DOCS' kosher diet (Item 23, p. 9, "Prayer for Relief" ¶ B), and hiring of an NOI member as an inmate clerk to conduct NOI affairs (*id.,* ¶ C(7)). Each of these claims are now addressed in turn.

### 2. Access to Kosher Diet.

■ Plaintiffs' claim for access to the kosher diet provided to Jewish inmates must also be rejected. In order to estab-lish that a particular prison policy violates an inmate's constitutional right to the free exercise of his or her religious beliefs, the inmate must demonstrate that the state action substantially burdened the exercise of religion. *Jolly v. Coughlin,* 76 F.3d 468, 475 (2d Cir.1996); *Boomer v. Irvin,* 963 F.Supp. 227, 231 (W.D.N.Y.1997); *Abdul–Malik v. Goord,* 1997 WL 83402, at *7 (S.D.N.Y. February 27, 1997). As stated by the Supreme Court:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.

*Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707, 717–18, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), *quoted in Abdul–Malik v. Goord, supra; see also Jolly v. Coughlin, supra,* 76 F.3d at 477. If the plaintiff establishes that the state has substantially burdened the exercise of his of her religion, then the state must justify its actions by showing that its regulations, policies or practices are "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 353, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *see also Salahuddin v. Coughlin,* 993 F.2d 306, 308–09 (2d Cir.1993); *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.), *cert. denied,* 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990); *Withrow v. Bartlett,* 15 F.Supp.2d 292 (W.D.N.Y.1998).

■ The dietary component of plaintiffs' claim against DOCS has been considered and ultimately rejected in several cases within the Second Circuit, including *Allah v. Kelly,* No. 96–CV–7323CJS(H) (W.D.N.Y. April 19, 1999) (Heckman, M.J., R & R adopted January 27, 2000); *Abdul–Malik v. Goord, supra,* and *Green v. Coughlin,* No. 88–CV–214 (N.D.N.Y. Octo-

ber 11, 1991). In *Green v. Coughlin,* the plaintiff claimed that DOCS' failure to provide a "Halal" [meaning "allowed" or "lawful," as opposed to "Haram," meaning "prohibited" or "unlawful"] diet to Muslim inmates violated the First Amendment and the equal protection clause. Applying the *Turner/O'Lone* criteria, the court granted the defendants' summary judgment motion, finding that DOCS' policy was "reasonably related to legitimate penological interests in operating the facility appropriately within budgetary constraints." *Green v. Coughlin, supra,* slip op. at 4.

*Abdul–Malik* was a class action certified on behalf of "all current and future general population inmates of DOCS' facilities who seek to maintain a Halal diet." *Abdul–Malik v. Goord, supra,* 1997 WL 83402, at *1. The plaintiff claimed that DOCS' failure to provide Muslim inmates with Halal meat three to five times a week was a violation of the Religious Freedom Restoration Act ("RFRA," declared unconstitutional in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)), the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. After a bench trial, the court found that the plaintiff had failed to show that DOCS had substantially burdened Muslim inmates' free exercise of religion because the Religious Alternative Menu ("RAM") currently offered by DOCS to the entire general population of the prison system statewide meets the requirements of a Halal diet. *Id.,* 1997 WL 83402, at *6. As stated by the court in *Abdul–Malik:*

[T]he RAM menu provides a nutritionally adequate diet for an inmate who eats from that menu exclusively.... All that is required for a prison diet not to burden an inmate's free exercise of religion is "the provision of a diet sufficient to sustain the prisoner in good health without violating [his religion's] dietary laws." The RAM diet is sufficient to sustain prisoners in good health and its consumption does not require any violation of the tenets of Islam.

*Id.* (quoting *Kahane v. Carlson,* 527 F.2d 492, 496 (2d Cir.1975)).

In *Allah v. Kelly,* this court was presented with the precise issue raised by plaintiffs here—*i.e.,* whether DOCS' policy of refusing to allow NOI inmates to participate in the kosher food program violated the NOI inmates' constitutional rights. The DOCS employees sued in that case argued that the RAM program provides a nutritionally adequate diet which does not impinge upon NOI inmates' exercise of their religious beliefs. Upon comparison of the foods offered in the RAM menu with the dietary requirements described by Elijah Muhammad in "How to Eat to Live,"[3] the court found that DOCS' accommodation of the plaintiff's religious diet was reasonable and nutritionally adequate, and that the plaintiff's exercise of his religion was not substantially burdened. *Allah v. Kelly,* No. 96–CV–7323CJS(H), slip op. at 9. The court also found that DOCS' adoption of the RAM diet was reasonably related to legitimate penological interests, under the *Turner/O'Lone* criteria. *Id.* at 9–12. Finally, the court rejected the plaintiff's Eight Amendment, equal protection

3. In "How to Eat to Live," Elijah Muhammad sets forth both general and specific dietary guidelines for "good health and the prolongation of life" (Book 1, ch. 22). Generally, followers are instructed to "eat one meal a day, or once every 24 hours" (*id.*). Specifically, followers are instructed that the following foods are acceptable: whole wheat or rye bread, cooked thoroughly; raw fruit, and fruit pies made with brown sugar and whole wheat flour; healthy—or kosher—beef, lamb and chicken; squab; fresh vegetables, especially small navy beans, but not lima beans, soy beans, kale, peas, collard greens, turnip greens, sweet potatoes or white potatoes; some fish, including bass, white fish, channel trout, river trout, perch and "buffalo fish;" and, cream cheese (Book 1, chs. 2, 3, 22; Book 2, ch. 19). The following additional foods are forbidden: .pork, fried or hard baked foods, corn bread, freshly cooked bread, hot cakes and syrup, nuts, halibut, catfish, carp, eel, oyster, lobster, crab, clam, shrimp and snail (*id.*).

and due process challenges to DOCS' refusal to accommodate his request to participate in the kosher food program. *Id.* at 12–14.

The analysis in *Allah v. Kelly* applies with equal force in this case. Because the RAM diet does not substantially burden NOI inmates' exercise of their religious beliefs, and because the courts have repeatedly found that DOCS' RAM program is reasonably related to legitimate penological interests, no rational juror could find in favor of plaintiffs on their claim for access to the kosher diet. Accordingly, summary judgment in favor of defendants is appropriate.

### 3. Request for Inmate Clerk Job.

██ . In ¶ C(7) of the Second Amended Complaint's "Prayer for Relief," plaintiffs seek an order directing defendants "to hire said member of [the] Nation of Islam as a[n] inmate clerk to conduct N.O.I. affairs starting at pay grade three (Item 26, p. 9)." This claim must also be rejected.

It is well established that inmates in the DOCS system do not have any constitutional, statutory, regulatory or precedential right to a particular prison job. *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987) (citing *Cooper v. Smith*, 63 N.Y.2d 615, 616, 479 N.Y.S.2d 519, 468 N.E.2d 701 (1984)); *see also Roberts v. Truesdail*, 1998 WL 178809, at *6 (N.D.N.Y. April 7, 1998); *Hodges v. Jones*, 873 F.Supp. 737, 745 (N.D.N.Y.1995). Accordingly, no rational juror could find in favor of plaintiff on this claim, and summary judgment in favor of defendants is appropriate.

### 4. Lack of Personal Involvement.

Defendants also seek dismissal of plaintiffs' claims for damages on the grounds that Imam Umar, Imam Najeeuallah and Rabbi Mowery were not personally involved in any alleged violation of plaintiffs' rights. As explained in this court's prior report and recommendation, personal involvement of a defendant is a prerequisite to any award of damages under 42 U.S.C. § 1983. *Muhammad v. Coughlin, supra,* 1998 WL 950984, at *2 (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991); *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). Having found no constitutional violation with respect to plaintiffs' claims for access to the kosher food program and the inmate clerk job, and having found that plaintiffs' remaining claims are precluded by the settlement order in *Muhammad v. Coughlin,* No. 91–CIV–6333 (S.D.N.Y. January 5, 1995), defendants Umar, Najeeuallah and Mowery cannot be found to be personally responsible for any constitutional violation in this case. Accordingly, summary judgment should be granted in their favor. *See Rabb v. McMaher,* 1998 WL 214425, at *7 (N.D.N.Y. April 24, 1998).

### 5. Qualified Immunity.

██ Finally, defendants seek summary judgment on the ground of qualified immunity. Qualified immunity shields government officials who perform discretionary functions from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Washington Square Post No. 1212 v. Maduro,* 907 F.2d 1288, 1290 (2d Cir.1990). Even when the rights at issue are clearly established, qualified immunity will protect a government official from civil liability "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987); *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990); *Gittens v. LeFevre,* 891 F.2d 38, 42 (2d Cir.1989). "The objective reasonableness test is met—and the defendant is entitled to immunity—if

'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Thus, a defendant is entitled to summary judgment on qualified immunity grounds when, "looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs," the court determines that no reasonable jury could conclude that it was objectively unreasonable for the defendant to believe that his or her conduct or actions did not violate an established federally protected right. *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986), *quoted in Robison, supra,* 821 F.2d at 921; *Lennon v. Miller, supra,* 66 F.3d at 420. "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Lennon, supra.*

In this case, as the discussion above demonstrates, no reasonable juror could conclude that it was objectively unreasonable for defendants to believe that their implementation of DOCS' policies with respect to plaintiffs' requests for access to dietary, religious or employment programs violated any established constitutional or statutory rights. Accordingly, defendants are entitled to summary judgment on the ground of qualified immunity.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (**Item 60**) should be granted, and plaintiffs' motion for summary judgment (**Item 57**) should be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**