Mac HUDSON and Derrick Tyler

v.

Michael T. MALONEY, et al.

No. 01–CV–12145–RGS.

United States District Court,
D. Massachusetts.

July 23, 2004.

Mary C. Eiro–Bartevyan, Department of Correction, Legal Division, Richard C. McFarland, Department of Correction, Nancy Ankers White, Department of Correction, Boston, MA, for Michael Maloney, Defendant.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

In this lawsuit against the former Massachusetts Commissioner of Correction, two former Superintendents of MCI–

Cedar Junction, and one former and one present prison administrator, plaintiff inmates, who are Muslim, allege violations of their First Amendment right to the free exercise of their religion. At the center of the dispute is the contention that prison officials have discriminated against Muslim inmates by refusing to provide "Halal"[1] meat as a regular part of their diet, and by refusing the request that meals be prepared and served exclusively by Muslims. Plaintiffs also complain that prison officials have banned Muslim inmates from possessing full-size prayer rugs.[2] The Complaint seeks injunctive and declaratory relief and money damages pursuant to 42 U.S.C. § 1983. The defendants are named in both their official and personal capacities.

*Qualified Immunity*

■■■ Where a constitutional violation is made out on the face of a party's submissions, the trial court is to decide the immunity issue at the earliest practicable opportunity. "[B]ecause '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability,' . . . we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (*per curiam* ).

■■■ Qualified immunity attaches to discretionary conduct of government officials that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (officers immune unless their actions were "clearly proscribed" by established law). "The right in question, . . . cannot be simply a generalized right to due process. . . . It must be clearly established in a 'particularized'· sense, so that 'the contours of the right' are clear enough for any reasonable official in the defendant's position to know that what the official is doing violates that right." *Danese v. Asman,* 875 F.2d 1239, 1242 (6th Cir. 1989). As a rule, a right is "clearly established" when it is enunciated by a court of controlling authority in the defendant's jurisdiction in a case sufficiently similar in its facts "that a reasonable officer could

---

1. The Halal dietary restrictions at issue principally involve the preparation of meat. An Islamic website, eat-halal.com, describes the proper method as follows:

 Animals such as cows, sheep, goats, deer, moose, chickens, ducks, game birds, etc., are also Halal, but they must be *Zabihah* (slaughtered according to Islamic Rites) in order to be suitable for consumption. The procedure is as follows: the animal must be slaughtered by a Muslim (or a Jew or Christian). The animal should be put down on the ground (or held if it is small) and its throat should be slit with a very sharp knife to make sure that the 3 main blood vessels are cut. While cutting the throat of the animal (without severing it) the person must pronounce the name of Allah or recite a blessing which contains the name of Allah, such as "Bismillah Allah–u–Akbar."

2. It is undisputed that Muslim inmates are permitted to possess prayer towels for use in their prayer ritual. The Department's ban on full-size prayer rugs is justified by appropriate security concerns over the fire hazard and sanitation problems the rugs pose as well as their potential use as a repository for concealed contraband. The ban on full-size prayer rugs passes the test of *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). Moreover, it is unclear that any constitutional right is implicated by the ban, as plaintiffs point to no tenet of the Muslim faith that requires that the prayer ritual be performed on a prayer rug as opposed to a prayer towel.

not have believed that his [instant] actions were lawful." *Wilson v. Layne,* 526 U.S. 603, 616–617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). *See also Starlight Sugar, Inc. v. Soto,* 253 F.3d 137, 144–145 (1st Cir. 2001) (relevant state, as well as federal decisions should also be considered). While "general statements of the law are not inherently incapable of giving fair and clear warning," they do so only if their application to a specific set of facts is apparent. *United States v. Lanier,* 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Rivera v. Murphy,* 979 F.2d 259, 263 (1st Cir.1992), quoting *Hunter,* 502 U.S. at 229, 112 S.Ct. 534.

 Whether a plaintiff has adequately alleged a viable cause of action under § 1983 is a matter of law for the trial court. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). In making such a determination, a prescribed sequence is to be followed. The court must "determine whether the plaintiff has alleged [a] deprivation of an actual constitutional right at all," before considering whether that right was clearly established when the alleged violation occurred. *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). Stated differently, the "threshold" question that must be answered is this: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? ... If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Only if the violation of a right

is found does the court proceed to answer the remaining questions in the sequence: whether the right was clearly established; and if so, whether a similarly situated reasonable official would have understood that his conduct violated clearly established law. *Savard v. Rhode Island,* 338 F.3d 23, 27 (1st Cir.2003). "This order of procedure is designed to 'spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.' ... Deciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609, 119 S.Ct. 1692.

 That the plaintiffs clearly identified viable and pertinent constitutional rights in their Complaint under the First and Fourteenth Amendments is not seriously contested by defendants. While the rights afforded to an inmate are necessarily circumscribed by virtue of incarceration, he does not lose all protections of the Constitution. "In the First Amendment context ... a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), "including [the Amendment's] directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). Free exercise claims brought by prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id. See also Shaw v. Murphy,* 532 U.S. 223, 228–229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001).

Plaintiffs allege that corrections officials violated their rights under the Free Exercise Clause by refusing to allow them to practice their Muslim faith in accordance with their understanding of Islamic dietary laws.[3] They also argue that the defendants have violated their rights under the Equal Protection Clause because similarly situated Jewish and Seventh Day Adventist inmates are offered meals prepared according to the dietary laws of their religions, while Muslim inmates are offered in lieu of Halal meat, the alternatives of a vegetarian or pork-free diet.

Consequently, it is to the second step of the *Saucier* test that the court turns: would a reasonable prison administrator when confronted, in September of 2002, at the latest, with plaintiffs' demands for Halal meals prepared by Muslim inmates, have determined that a clearly established right was being invoked. Here, it is important not to confuse the general with the particular and to frame the issue precisely. In September of 2002, a reasonable prison official would have known that a prisoner's right to the free exercise of his religion, so long as it did not compromise institutional security, was clearly established, and further that this right encompassed a diet consistent with the prisoner's sincere religious beliefs. *See, e.g., Kahane v. Carlson,* 527 F.2d 492, 496 (2d Cir.1975). Rather, the precise question that would have been asked is whether the law had clearly established a Muslim inmate's right to a particular dietary ingredient (Halal meal), prepared in a particular way (by other Muslim inmates), or whether it was sufficient for prison authorities to provide an alternative diet (vegetarian or pork-free) that was "consistent" with the teachings of the inmate's faith, if not every aspect of his belief.

▮▮▮ In consulting the decisions of courts that had considered the issue before September of 2002,[4] a reasonable prison official would have learned that the vast majority of these courts had determined that a prison permissibly discharged its constitutional duty to respect the dietary beliefs of Muslim inmates by offering an alternative, pork-free diet, and more broadly, that the law permitted prison authorities to limit the dietary options available to prisoners in the interests of reducing the costs and burdens entailed in accommodating the smorgasbord of food-related religious beliefs likely to be encountered in a prison population. *See, e.g., Kahey v. Jones,* 836 F.2d 948, 950 (5th Cir.1988) ("[P]risons need not re-

3. Defendants seek to establish through the affidavit of Ibrahim Rahim, the Director of the Department's Diversity Office, an acknowledged Muslim scholar, and a former prison chaplain, that plaintiffs' understanding of Islamic dietary requirements, which are drawn from the teachings of Elijah Muhammad and the Nation of Islam, are based on a misinterpretation of Islamic teachings and the dictates of the Qu'ran. The issue in free exercise cases, however, is not whether an adherent has correctly divined the religious commands of his faith, but whether his understanding of what his religion requires, however unorthodox, is based on a sincerely held religious belief. *Frazee v. Illinois Department of Employment Security,* 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L.Ed.2d 914

(1989). I do not understand defendants to question the sincerity of the plaintiffs' interpretation of Islamic dietary restrictions.

4. A State may create an enforceable liberty or property interest accruing to a prisoner by its own statutes or regulations. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). As defendants point out, there is no statute in Massachusetts that restricts the discretion of the Commissioner of Correction with respect to prison dietary policies. The only relevant regulation, 103 CMR 471.09(5), guarantees inmates whose religion places restrictions on what they may eat "access to a special diet," but it does not guarantee any particular "special diet."

spond to particularized religious dietary requests."); *Denson v. Marshall*, 59 F.Supp.2d 156, 158–159 (D.Mass.1999), *aff'd*, 230 F.3d 1347, 2000 WL 1450999 (1st Cir.2000) (no constitutional violation where a Muslim inmate in a disciplinary unit was denied a request for special food items to be delivered before sunrise during three to five fast days each month); *Abdul–Malik v. Goord*, 1997 WL 83402, at *7–8 (S.D.N.Y. Feb. 27, 1997) (after a bench trial, the district court found that Muslim inmates' rights were not violated by the prison's failure to provide Halal meat three times a week where a "Religious Alternative Menu" (RAM) was available); *Muhammad v. Warithu–Deen Umar*, 98 F.Supp.2d 337, 344–345 (W.D.N.Y.2000) (no constitutional violation where a Muslim inmate was denied Kosher meals because an available RAM did not offend any Muslim dietary requirement); *Abdullah v. Fard*, 974 F.Supp. 1112, 1118–1119 (N.D.Ohio 1997) (no constitutional violation where a Muslim inmate was provided a "nutritionally adequate alternative" for a meat entrée in lieu of Halal meat); *Benjamin v. Coughlin*, 708 F.Supp. 570, 575–576 (S.D.N.Y.1989) (no constitutional violation where a prison refused to provide a Rastafarian diet, even though Jewish and Muslim prisoners were provided special diets); *Wesley v. Kalos*, 1997 WL 767557, at *4 (S.D.N.Y. Dec. 11, 1997) (inmate's complaint that he was not provided Halal meals failed to establish an Eighth Amendment claim); *DeHart v. Horn*, 227 F.3d 47, 53 (3d Cir.2000) ("[A] prison's interest in an efficient food system and in avoiding inmate jealousy are legitimate penological concerns ...."); *Ward v. Walsh* 1 F.3d 873, 877 (9th Cir.1993) (in deciding whether the denial of an inmate's specific dietary requests violates the First Amendment, courts must balance the impingement on the right of free exercise of religion against the cost of the accommodation and whether there are alternate means by which the inmate can practice his religion); *Muslim v. Frame*, 854 F.Supp. 1215, 1224 (E.D.Pa.1994) ("[I]n prison, religious practices are subject to reasonable restrictions to preserve order and safety."); *Salaam v. Collins*, 830 F.Supp. 853, 857 (D.Md.1993) ("[P]rison administrators have 'wide latitude' to treat inmate groups differently unless it is clear that the two groups are so similar as to make the differing treatment an abuse of discretion."). In light of this legal precedent, no reasonable prison official would have concluded that Muslim inmates had an established right to Halal meals prepared by other Muslim inmates or that prison administrators did not have broad discretion in the matter of prison dietary alternatives.[5] Defendants are therefore entitled to qualified immunity.

---

**5.** The latter aspect of plaintiff's demand, that only Muslim inmates be permitted to prepare meals for other Muslim inmates, would not under any circumstances pass the test of *Turner*, 482 U.S. at 89, 107 S.Ct. 2254, as affirmed in a First Amendment context by *Estate of Shabazz*, 482 U.S. at 350–353, 107 S.Ct. 2400. Under the *Turner* test, a prison regulation or practice that impinges on an inmate's constitutional rights, passes muster if it is reasonably related to a legitimate penological interest. As the court observed in denying plaintiffs' motion for a preliminary injunction, "any special selection of inmates for food service positions based on their religious affiliation would violate the Department of Correction's policy of assigning jobs on a nondiscriminatory basis and [would] expose it to potential litigation, as well as resentment on the part of other inmates at the special treatment accorded to plaintiffs." Moreover, the Department's food service employment policy does not impinge on any constitutional right of the plaintiffs. As the Rahim affidavit explains, the Qu'ran specifically permits Muslims to consume food prepared by non-Muslims. Plaintiffs do not maintain that their desire to be served by Muslim food service workers is based on any Islamic teaching, but

*Official Immunity*

A suit against a government official in his or her official capacity is the same as a suit "against [the] entity of which [the] officer is an agent." *Monell v. New York City Dep't. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy of custom' must have played a part in the violation of a federal law." For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses. Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under the color of state law.

*Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (citations omitted).

Under the Eleventh Amendment, a State, its agencies, and agency officials acting in their official capacities are not "persons" for purposes of section 1983, and therefore are not subject to suit for money damages in the federal courts without the State's consent. *Will v. Michigan Department of State Police,* 491 U.S. 58, 65–67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102–103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Laubinger v. Department of Revenue,* 41 Mass.App.Ct. 598, 601–602, 672 N.E.2d 554 (1996). The Commonwealth has not consented to being sued for money damages in either the federal courts or in its own courts under § 1983. *Woodbridge v. Worcester State Hospital,* 384 Mass. 38, 44–45 & n. 7, 423 N.E.2d 782 (1981). *Cf. Commonwealth v.*

*ELM Medical Laboratories, Inc.,* 33 Mass. App.Ct. 71, 76–77, 596 N.E.2d 376 (1992) (same, State Civil Rights Act).

When a state official is sued in his official capacity, the plaintiff is limited to equitable (injunctive) relief. *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *See also Ex parte Young,* 209 U.S. 123, 159–160, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The issue, therefore, that remains is whether plaintiffs are entitled to prospective relief ordering the Department to make Halal meat available to Muslim inmates as a regular dietary alternative. The justification offered by the Department in its summary judgment motion for its refusal to do so, as presented in the affidavit of Peter Szafir, the Department's Director of Food Services, is based on the "prohibitive" cost and the advice of an unnamed food services vendor "that it would be very difficult to obtain sufficient numbers of Halal meals on a regular basis since there is not a consistent and reliable supply of Halal meals available." The affidavit further acknowledges that Jewish inmates are provided Kosher meals by an outside vendor, but that to provide a similar accommodation to Muslim inmates "would cost the Department nearly three times more money than is allocated for the standard menu and more than twice as much as the Department incurs for the cost of the alternative vegetarian meals." Conspicuously absent from the pleadings is any material establishing in a competent way that no "consistent and reliable" source of Halal meat is available to the Department, that the costs of providing meals with Halal meat would in fact be two or three times that of the existing standard and vegetarian menus, or any analysis of the comparative costs of providing

appears to have as its basis an expression of

solidarity with Muslim coreligionists.

Kosher and Halal meals. Without this information, the court is in no position to determine whether the defendants are able to discharge their burden under *Turner* of showing that their refusal to provide Muslim inmates with a diet including Halal meat is based on a legitimate penological interest sufficient to overcome the plaintiffs' free exercise and equal protection claims. Because the issue is one of public significance, and shorn of any claim for monetary damages, potentially involves the larger rights of the Muslim prison population rather than solely the plaintiffs' private concerns, the court will reconsider plaintiffs' motion for appointment of counsel, and seek to find counsel willing to represent the plaintiffs' interests in the concluding injunctive phase of the case.

## ORDER

For the foregoing reasons, the defendants' motion for summary judgment [docket # 29] is *ALLOWED* in part. The court finds that the defendants are entitled to a grant of qualified immunity and will therefore *DISMISS* all defendants from the suit in their personal capacities. The court further determines that plaintiffs are not entitled to injunctive relief on the issues of the prayer rug ban or the defendants' policy of assigning food service workers' positions on a nondiscriminatory basis. The motion for summary judgment on the issue of the provision of Halal meat to Muslim inmates is *DENIED,* the court having determined that a triable issue of fact exists on this aspect of the plaintiffs' request for injunctive relief. The motion to stay summary judgment pending the completion of further discovery [docket # 32] is *MOOT.* Defendants' motion for a protective order [docket # 33] is *AL-LOWED* in part. The court will substitute the current Commissioner of Correction in his official capacity for the former officials named by the plaintiffs in their official

capacities, and will *DISMISS* these named defendants from the suit as they no longer have the authority to implement any prospective injunctive relief that the court might grant. The court will for the same reason *DISMISS* defendant Sherry Elliot, the Director of Treatment at MCI–Cedar Junction, from the lawsuit in her official capacity. The court will *STAY* further proceedings in this case and defer action on any further discovery requests pending the appointment of counsel to represent plaintiffs on the remaining issue in the case, plaintiffs' entitlement, if any, to prospective relief on the issue of Halal meat. Plaintiffs' renewed motion for a preliminary injunction [docket # 36] is *DENIED.*

SO ORDERED.