Derek Sincere Black Wolf
CRYER, Plaintiff,

v.

MASSACHUSETTS DEPARTMENT
OF CORRECTION, et al.,
Defendants.

Civil Action No. 1:09–10238–PBS.

United States District Court,
D. Massachusetts.

Jan. 7, 2011.

Richard C. McFarland, Commonwealth of Massachusetts, Department of Correction, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

PATTI B. SARIS, District Judge.

Pro se Plaintiff Derek Sincere Wolf Cryer ("Cryer") has moved for clarification and reconsideration of this Court's Order entered November 22, 2010, 2010 WL 5317397. Because plaintiff's new motion significantly scales back his requests for relief, the Court will vacate its order of dismissal. In addition, the Court adopts the Magistrate Judge's Report and Recommendations. Accordingly, I **DENY** in part both plaintiff's partial motion for summary judgment (Docket No. 70) and defendants' partial motion for summary judgment (Docket No. 75), and **ALLOW** in part defendants' motion.

### I. BACKGROUND

Plaintiff seeks relief under the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* and under Massachusetts constitutional, statutory and regulatory law. Plaintiff is an inmate at the Souza–Baranowski Correctional Center in Shirley, Massachusetts and is a member of that facility's Native American spiritual group, referred to as the "circle." Plaintiff's complaint, at its core, seeks access to ceremonial tobacco to be used for religious purposes.

Both plaintiff and defendants moved for partial summary judgment in this case. Magistrate Judge Collings provided this Court with a comprehensive analysis of the issues in his Report and Recommendations (Docket No. 82). In the report, Magistrate Judge Collings noted the ambiguity among the Complaint and plaintiff's subsequent pleadings about the breadth of access to ceremonial tobacco that the plaintiff was seeking:

A fair reading of Cryer's complaint suggests that Cryer contends that only unrestricted access to ceremonial tobacco will do: he suggests, for example, that he is unable to pray in his cell or elsewhere without access to ceremonial prayer tobacco, stating that "Plaintiff has been denied to Pray with Ceremonial Tobacco in the Mornings, Afternoons and Nights" ... and he requests declaratory and injunctive relief permitting him "to Pray with Ceremonial Tobacco in the Mornings, Afternoon, and Nights".... Cryer is less categorical in his response to the defendants' cross-motion for summary judgment [docket no. 77], in which he requests an accommodation allowing "Native Americans to use tobacco during the time the administration has already scheduled [Native American inmates] to meet in the south yard which is closed off to all other inmates."

Report and Recommendations at 6. Based on this ambiguity about the relief sought, the Magistrate Judge recommended that this Court allow the defendants' motion for partial summary judgment under RLUIPA to the extent that the plaintiff seeks unrestricted access to ceremonial tobacco, but deny without prejudice to renewal to the extent that the plaintiff seeks access to

ceremonial tobacco during the once-monthly smudging ceremony. *Id.* at 40.

Upon review, this Court adopted the legal analysis of the Magistrate Judge's Report and Recommendations and, finding that plaintiff had indicated "that he is not seeking access just during the smudging ceremony," dismissed the case.

## II. DISCUSSION

After the Court issued its order dismissing this case, Cryer filed a "Motion and Affidavit Seeking Relief from Final Judgment ... Requesting Reinstatement, Reconsideration, Oral Argument, and Clarification. Plaintiff's motion made clear that Cryer read this Court's November 22, 2010 order as finding that he had not sought access to ceremonial tobacco in any form. The Court writes now to clarify that misconception.

The Complaint in this case appears to seek unrestricted access to ceremonial tobacco within a prison facility at all times and places. The Court agrees with the Magistrate Judge's analysis that such a broad request must result in an award of summary judgment to the defendants.

However, in his recent Motion, Cryer states that "I am seeking access but also state that I'm not seeking *UNLIMITED* access, *UNRESTRICTED* access or UNFETTERED access." (*See* Docket No. 94.) Based on this statement, which significantly limits the relief originally sought by plaintiff in his complaint, the Court agrees that dismissal of the case in its entirety is not the appropriate course of action.

## III. ORDER

Given the modification of plaintiff's request for relief, the Court adopts the Report and Recommendation in full. Accordingly, the Court:

1. *ALLOWS* the defendants' Motion for Summary Judgment under the RLUIPA to the extent that the plaintiff seeks unrestricted access to ceremonial tobacco, but *DENIES* the motion without prejudice to renewal to the extent that the plaintiff seeks access to ceremonial tobacco during the once-monthly smudging ceremony.

2. *ALLOWS* the defendants' Motion for Summary Judgment on the plaintiff's challenge to the DOC policy with respect to claims brought under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment.

3. *ALLOWS* the defendants' Motion for Summary Judgment on the plaintiff's First Amendment challenge to the DOC policy with respect to official capacity claims for money damages, but *DENIES* the motion with respect to claims for declaratory and injunctive relief to the extent that the plaintiff seeks access to ceremonial tobacco during the once-monthly smudging ceremony. The Court *ALLOWS* defendants' motion on the First Amendment claim on qualified immunity grounds.

4. *DENIES* the plaintiff's Motion for Partial Summary Judgment on the plaintiff's state law claims under Mass. Gen. L. Ch. 22(c)(8) and Mass. Gen. L. Ch. 30A. The Court *ALLOWS* defendants' motion on these claims.

5. *ALLOWS* the defendants' Motion for Summary Judgment under the Massachusetts Civil Rights Act, Mass. Gen. L. Ch. 12, §§ 11(H) & 11(I).

6. *ALLOWS* the defendants' Motion for Summary Judgment in part under Art. 2 of the Massachusetts Declaration of Rights to the extent that the plaintiff seeks unlimited access to ceremonial tobacco, but *DENIES* to the motion to the extent that the plaintiff seeks access to ceremonial tobacco during the once-monthly smudging ceremony.

7. *ALLOWS* the defendants' Motion for Summary Judgment in part under Mass. Gen. L. Ch. 127, § 88, to the extent that the plaintiff seeks unlimited access to ceremonial tobacco, but *DENIES* to the motion to the extent that the plaintiff seeks access to ceremonial tobacco during the once-monthly smudging ceremony.

8. *ALLOWS* the defendants' Motion for Summary Judgment under the Massachusetts Tort Claims Act, Mass. Gen. L. Ch. 258, § 4, to the extent that Cryer seeks to sue the Commonwealth and the individual defendants in their official capacity.

9. *ALLOWS* the defendants' Motion for Summary Judgment under 103 C.M.R. 471 and 103 C.M.R. 403.10(9), to the extent that the plaintiff seeks monetary damages under the regulations.

## *REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS A MATTER OF LAW (# 70), AND DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT (# 75)*

COLLINGS, United States Magistrate Judge.

### I.  Introduction

Pending before the Court are the parties' cross-motions for summary judgment on the plaintiff's claim that the Massachusetts Department of Corrections' policy banning tobacco smoking and possession ("DOC policy") abridges his rights under, *inter alia*, the federal constitution, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*

**1.** For consistency, the Court uses the spelling "kinnick-kinnick" throughout unless quoting from a source that spells it differently.

**2.** The DOC policy at issue here provides:
444.01  *Inmate Smoking*

("RLUIPA"), and Massachusetts constitutional, statutory and regulatory law. His complaint seeks declaratory and injunctive relief, and money damages related to these claims. (*See* Complaint, # 1) For the reasons explained below, the Court will recommend denying the Plaintiff's Motion for *Partial* Summary Judgment (# 70), and granting in part and denying in part the Defendants' Cross–Motion for Summary Judgment (# 75).

### II.  Background

The factual background and relevant law has been set out in this Court's previous report and recommendation, *see Cryer v. Clark*, No. 09–10238–PBS, 2009 WL 6345768 (D.Mass. July 9, 2009) (slip copy); Docket No. 31, and the Court presumes familiarity with its contents. For present purposes, the Court notes that the parties appear to agree on the following facts. The plaintiff, Derek Sincere Black Wolf Cryer ("Cryer"), is an inmate at the Souza–Baranowski Correctional Center ("SBCC"), a maximum security facility in Shirley, Massachusetts. Cryer is a member of the Native American spiritual group at SBCC, also known as the "circle." On the first Monday of the month, the Native American circle meets outside in a fenced area in SBCC's South yard. During these monthly meetings, the Native American circle is permitted to conduct smudging and pipe ceremonies. At this time, the inmates may burn and smoke kinnick-kinnick,[1] sweet grass and sage. Otherwise, the inmates are prohibited from possessing and using tobacco products, under a DOC policy that bans smoking on DOC property.[2]

The smoking, possession or other use of tobacco products by inmates is prohibited on all Department of Correction property, and property under the control of the department.

On November 23, 2009, Cryer filed his Motion for Partial Summary Judgment as a Matter of Law (# 70), with accompanying exhibits, and a Motion for Hearing (# 71). On December 9, 2009, the defendants filed Defendants' Cross–Motion for Partial Summary Judgment (# 75), along with a Memorandum of Law in Support (# 76) and the Affidavit of Anthony Mendonsa (# 76–1). On December 28, 2009, Cryer responded by filing Plaintiff's Combined Affidavit, Memorandum of Law and Opposition Motion to Defendants [sic] Cross Summary Judgement Motion and in Support of Plaintiff's Motion for Partial Summary Judgment as a Matter of Law (# 77), along with additional exhibits. At this juncture, the motions are ripe for resolution.

### III. Discussion

### A. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir.2005) (internal quotations and citation omitted). When considering a motion for summary judgment, the Court must determine whether "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir.2003). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show

that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontánez–Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54–55 (1st Cir.2006) (internal quotation marks and citation omitted).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir.2006). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). " 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." ' " *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### B. Analysis of Claims—Framing the Issues

Cryer's complaint seeks a number of accommodations to be able to practice his Native American religion. The present motions are limited to Cryer's complaint concerning the defendants' decision to deny Cryer's request for access to ceremonial tobacco. A fair reading of Cryer's complaint suggests that Cryer contends that only unrestricted access to ceremonial tobacco will do: he suggests, for example, that he is unable to pray in his cell or

elsewhere without access to ceremonial prayer tobacco, stating that "Plaintiff has been denied to Pray with Ceremonial Tobacco in the Mornings, Afternoons and Nights" (# 1 ¶ 13); and he requests declaratory and injunctive relief permitting him "to Pray with Ceremonial Tobacco in the Mornings, Afternoon, and Nights" (# 1 at 6 ¶ 5). Cryer is less categorical in his response to the defendants' cross-motion for summary judgment (# 77 at 5), in which he requests an accommodation allowing "Native Americans to use tobacco during the time the administration has already scheduled [Native American inmates] to meet in the south yard which is closed off to all other inmates."

As explained below, the Court has no difficulty concluding that the DOC policy abridges no federal or state rights, and that summary judgment is warranted in the defendants' favor, to the extent that Cryer seeks unrestricted access to ceremonial tobacco: the security and health concerns associated with permitting inmates unrestricted access to tobacco within their cells, or even outdoors are manifest. However, construing Cryer's pleadings liberally, as the Court is bound to do, to the extent that Cryer advances a more modest proposal, *viz.*, access to ceremonial tobacco during the monthly ceremony, the Court recommends denying the defendants' cross-motion for summary judgment under the RLUIPA, the free exercise clauses of the First Amendment and Art. 2 of the Massachusetts Declaration of Rights, and Mass. Gen. L. Ch. 127, § 88. The Court notes, however, that because the present motions came as cross-motions for summary judgment, the defendants have not addressed this more limited request. Thus, to the extent the Court recommends denying the defendants' cross-motion for summary judgment, the denial is without prejudice to later renewal.

### 1. Federal Claims

Cryer has asserted a statutory claim anent the DOC policy under the RLUIPA, 42 U.S.C. § 2000cc, *et seq.* In addition, pursuant to 42 U.S.C. § 1983, Cryer challenges the DOC policy under the Free Exercise Clause of the First Amendment, the Cruel and Unusual Punishment Clause of the Eighth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. The defendants assert various immunity defenses in connection with the section 1983 claims, and also contend that summary judgment is warranted on the merits of all the federal claims.

### a. RLUIPA.

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson,* 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (footnote omitted). Section 3 of RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a)(1)–(2).

■ RLUIPA requires strict scrutiny of a rule that substantially burdens religious exercise "even if the burden results from a rule of general applicability." Thus, at the threshold, it is no answer to a claim under

RLUIPA that "both state statute and DOC policies ban the use and possession of tobacco products in any prison," (# 76 at 7), as this type of argument simply begs the question to be answered. The First Circuit has summarized the respective burdens of the plaintiff and government as follows:

a claim under RLUIPA includes four elements. On the first two elements, (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial, the plaintiff bears the burden of proof. *Id.* § 2000cc–2 (b). Once a plaintiff has established that his religious exercise has been substantially burdened, the onus shifts to the government to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest. *Id.*

*Spratt v. Rhode Island Dept. of Corrections*, 482 F.3d 33, 38 (1st Cir.2007). Thus, the statute sets up a burden-shifting standard, under which the plaintiff must first demonstrate that he or she has been inhibited in an "exercise of religion" and that the resulting burden is "substantial."

Here, there is no serious dispute that the use of "Ceremonial Prayer Tobacco" for smudging and pipe ceremonies constitutes "religious exercise" under the statute. RLUIPA defines a "religious exercise" broadly as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). *See also Cutter,* 544 U.S. at 720, 125 S.Ct. 2113 ("'[T]he 'exercise of religion' often involves not only belief and profession but the performance

of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . .") (internal quotation marks and citation omitted). Indeed, there also appears to be no dispute between the parties that smoking of certain herbs is an important part of Native American religious practice. Rather, the defendants contend that summary judgment is appropriate because Cryer "has failed to present any evidence demonstrating that the use of tobacco-free kinnick-kinnick for the ceremonies substantially burdens the exercise of his religion." (# 76 at 7)

*i. Does the DOC Policy Substantially Burden the Plaintiff's Religious Exercise?*

The statute does not define "substantial burden," and the First Circuit has not elaborated on its contours. *See Spratt,* 482 F.3d at 38. Nevertheless, the Supreme Court has elsewhere defined such a burden as one in which the government puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs. . . ." *Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *see also Hudson v. Dennehy,* 538 F.Supp.2d 400, 409–410 & n. 20 (D.Mass. 2008) (noting that the First Circuit assumed *arguendo* the applicability of *Thomas* standard in *Spratt,* but did not definitively adopt it, and surveying the various formulations adopted in other courts).[3]

■ In an exhibit attached to his complaint, Cryer has alleged the following:

---

3. Judge Stearns has recently commented that, "[t]he First Circuit (and by extension the Supreme Court) has yet to offer a conclusive definition of a 'substantial burden.' " *Blake v. Murphy,* No. 05–10508–RGS, 2010 WL 447780, at *2 n. 9 (D.Mass. Feb. 9, 2010). Judge Stearns has further noted that although several circuits have adopted various formulations, "[i]n practice, it is not clear that the decisional nuances in defining a substantial burden have any practical significance." *Id.*

Prayer Tobacco *also* known as N. rustica and N. Tabacum is a natural tobacco without added additives which is ABSOLUTELY and NECESSARILY ESSENTIAL for use in any and all prayers and communication with and to Our Ancestors that have passed over to the higher realm of existence. Without prayer tobacco, and because of the denial of prayer tobacco, I have not been able to Pray and Communicate with my Loved Ones who passed over....

# 1, Exh. A ¶ D.

In addition, Cryer responds to the summary judgment motion by pointing to the DOC's Religious Services Handbook (*see* # 77, Exh. 1),[4] which describes the practice of Native American worship as follows:

a. *Private*

Individual Native Americans will often Smudge. This is a process of using smoke to clear away negative energies and to attract positive energies. Small amounts of sage, sweetgrass or a high grade of tobacco with as few additives in it as possible are used to produce smoke. Tobacco, like sage, tends to draw the negativity out of things and the sweetgrass brings in positive energies. Other plants, like cedar and juniper, may also be used because of their special healing powers.

. . .

b. *Corporate*

The Pipe Ceremony involves the use of the Sacred Pipe and is an important religious activity for Native Americans.... The pipe and any objects used with it should be smudged before the actual pipe ceremony. In a pipe ceremony, the bowl is filled with Tobacco, kinnik-kinnik, sage or sweetgrass in a ritual manner.

# 77, Exh. A at 42–43.

Cryer has also submitted a document entitled "Affidavits in Petition Form," (# 77, Exh. C), in which Cryer and several other members of the "Native American Spiritual Awareness Council" at SBCC aver:

As we are taught, We use Tobacco or a Tobacco Mix to Pray with. Since Our arrival at the above named prison and or since becoming Native Practitioners, We have not been able to Pray or make contact with Our loved ones that have passed on because We are not allowed the use of Tobacco.

Finally, Cryer points to a document that he says was produced by Chief Paul Pouliot of the Pennacook–Abenaki People.[5] This document, the Court notes, lists the "Purification Smudging Herbals" as:

Sweet Grass (usually braided),

Tobacco (various types without cigarette, cigar, or pipe additives),

Cedar (or Pine family related evergreens),

Fungus (dried Wood or Birch mushroom),

Sages (White, Purple, and Desert types) or a Smudge mixture of these.

Further, this document states that "[t]he vast majority of Native American Indian spiritual leaders insist on using tobacco in sacred ceremonies." (# 77, Exh. B)

The Court begins by noting that at least one court has agreed with the defendants'

---

4. Cryer cites to a Handbook, amended October 24, 2000. The Court notes that the current Handbook, amended November, 2008, deletes references to "tobacco" to reflect current policy. (# 11, Aff. of Christopher Mitchell, Exh. A)

5. The Court notes that this document is unauthenticated; because the defendants did not respond to Cryer's response to their cross-motion to summary judgment, they have not challenged its admissibility.

position that no substantial burden exists when Native American inmates have access to kinnick-kinnick. *See Adams v. Mosley*, 05–cv–352, 2008 WL 4369246, at *11 (M.D.Ala. Sept. 25, 2008) (granting summary judgment in favor of prison officials where Native American inmate failed "to offer any proof of the religious significance of tobacco [or to] demonstrate how use of the tobacco-free herb kinnick-kinnick rather than tobacco itself imposes a substantial burden on his religious exercise or causes him to depart significantly from his religious traditions"). On the other hand, other courts have concluded that a prison's absolute ban on tobacco smoking does not substantially burden a Native American's religious exercise *precisely because* the prison has permitted access to ceremonial tobacco in some form. *See, e.g., Bailey v. Rubenstein*, 08–cv–01204, 2009 WL 1024614, at *2 (S.D.W.Va. April 15, 2009) (denying motion for injunctive relief, and determining RLUIPA claim was frivolous because prison policy permitted Native American inmate "to smoke in religious ceremonies despite the generally applicable tobacco ban"); *Farrow v. Stanley*, 02–567, 2005 WL 2671541, at *5 (D.N.H. Oct. 20, 2005) (granting summary judgment in favor of prison officials where "system-wide prohibition on pure tobacco ... does not impose a substantial burden on [Native American inmate's] religious exercise" where prison policy "permit[s] the use of kinniknick with traces of tobacco" and plaintiff conceded that such a mix would be acceptable); *Skenandore v. Endicott*, 05–c–0234, 2006 WL 2587545, at *13 (E.D.Wis. Sept. 6, 2006) (finding that plaintiff had "made a colorable claim that the defendants' nonsmoking regulation substantially burdens his exercise of religion," but concluding that defendants had met burden to show compelling state interest in banning smoking in cells where 1) inmates may smoke tobacco in religious ceremony outside 2) and banning smoking in cell is least restrictive means to further health and security interests).[6] In short, the case law provides little guidance on this element.

Furthermore, because the matter comes before the Court as cross-motions for summary judgment, the defendants have not responded to Cryer's submissions on the question of "substantial burden," which of course followed the defendants'

---

6. Although the plaintiff bears the burden of proof on this point, the defendants, as the party moving for summary judgment, bear the burden of establishing that no genuine issue of material fact exists for trial. The defendants might have aided their cause at this juncture by shedding some light on how they came to conclude that kinnick-kinnick served as an adequate substitute for ceremonial tobacco. For example, in *Smith v. Allen*, 502 F.3d 1255, 1277 (11th Cir.2007), the Eleventh Circuit held that the DOC's decision to deny an inmate a small quartz crystal did not substantially burden the inmate's practice of Odinism. Notably, the DOC had itself undertaken "a probing and thorough review of [the inmate's] religious requests," *id.*, which included: discussing "the need for the crystal" with the inmate; "review[ing] documentation on Odinism ...; conduct[ing] independent research on the tenets of Odinism; [holding] discussions with Chaplains in other prisons on the religion's doctrines; and encourag[ing] Smith to submit as much evidence as he could in support of his request." *Id.* Likewise, in *Farrow v. Stanley*, 02–567, 2005 WL 2671541, at *5 (D.N.H. Oct. 20, 2005), in analyzing the question of "substantial burden," the court noted that "prison officials reached the decision to use kinniknick as a tobacco substitute after they consulted with several members of the Native American community"); *cf. also Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir.2006) ("We doubt that keeping [certain] books out of the prison substantially burdens anyone's religious exercise," where inmate offered only "his unreasoned say-so" to suggest importance of books to Odinism, and prison officials had submitted report of professor with expertise in folklore who concluded that books were "not Odinic or even religious").

motion for summary judgment on this point. Under RLUIPA, Cryer need not show that the use of tobacco is central to his religion. *Cf. also Thomas,* 450 U.S. at 714, 101 S.Ct. 1425 (noting that, in order to receive protection under the First Amendment, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others"). The documents taken together suggest the importance of tobacco to Native American ritual, and Cryer's averments suggest that tobacco serves a unique purpose in the Native American religion, in that, according to Cryer, prayer tobacco is "ESSENTIAL for use in any and all prayers and communication with and to Our ancestors." (# 1, Exh. A ¶ D) Because the DOC policy bans tobacco in any form—including ceremonial tobacco—the Court concludes on this record that a genuine issue of material fact remains on the question of whether the policy creates a substantial burden on Cryer's religious practice. *Cf. Starr v. Cox,* 05–cv–368, 2008 WL 1914286, at *10 (D.N.H. Apr. 28, 2008) ("Courts 'have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise.'") (quoting *Greene v. Solano County Jail,* 513 F.3d 982, 988 (9th Cir.2008)).

### ii. Does the DOC Policy Serve a Compelling State Interest and is the DOC Policy the Least Restrictive Means of Achieving that Interest?

■ Once the plaintiff meets the initial burden, the defendants must show that the restriction serves a "compelling interest" and that the regulation is the "least restrictive means" of serving that interest. Maintaining prison security is a compelling state interest, *see Spratt,* 482 F.3d at 39, and courts should "continue to give 'due deference to the experience and expertise of prison and jail administrators' in determining prison policy," *id.* (quoting *Cutter,*

544 U.S. at 717, 125 S.Ct. 2113). Nevertheless, "[c]ontext matters," *Cutter,* 544 U.S. at 723, 125 S.Ct. 2113 (internal quotations and citation omitted), in applying the standard, and prison officials fail to establish a compelling state interest by merely asserting a security concern, *see Spratt,* 482 F.3d at 39.

Here, the defendants have not responded to several of Cryer's arguments, advanced in his reply to the defendants' cross-motion for summary judgment, that the DOC's stated compelling interest in protecting the other inmates from secondhand smoke is inadequate because he and other Native American inmates are currently allowed access to the outdoors for the pipe and smudging ceremony, in an area that is closed off to all other inmates. (*See* # 77 at 2–3) He also questions the unsupported assertion that permitting Native Americans' access to ceremonial tobacco for religious purposes will create resentment among other inmates, and he notes that a similar argument was rejected in *Hudson,* 538 F.Supp.2d at 411 (noting that "Defendant produced little if any evidence validating its assertion that serving Halal meals to Muslim inmates would ignite inmate conflict").

■ Finally, even if prison officials meet their burden to establish a compelling state interest in burdening an inmate's religious exercise, they must still establish that its inhibition is the "least restrictive means" to achieve that interest. That is, prison officials must establish that the challenged prohibition does not "sweep[ ] more broadly than necessary to promote the government's interest," *Spratt,* 482 F.3d at 41 (internal quotation marks and citation omitted), and "[a] prison 'cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the effica-

cy of less restrictive measures before adopting the challenged practice.'" *Spratt,* 482 F.3d at 41 (quoting *Warsoldier v. Woodford,* 418 F.3d 989, 999 (9th Cir. 2005)).[7] As noted, it is unclear on this record (although it would be helpful to know), for example, how the DOC came to the conclusion that permitting the use of kinnick-kinnick during religious ceremonies was the least restrictive alternative, rather than, say, allowing the use of kinnick-kinnick containing some tobacco. As noted, Cryer seeks an accommodation to be able to use ceremonial tobacco on the one day in which he is permitted to smoke kinnick-kinnick outside, (*see* #70 at 3), and he argues that there is no evidence in the record that the defendants have considered the less restrictive alternative of "[a]llow[ing] Native Americans to use tobacco during the time the administration has already scheduled [for them] to meet in the south yard which is closed off to all other inmates." (#77 at 5) *Cf. Spratt,* 482 F.3d at 41 (the "narrow-tailoring test" requires the district court to evaluate "'the alternative measures put in issue by the parties'") (quoting *Casey v. City of Newport,* 308 F.3d 106, 114 (1st Cir.2002) (footnote omitted). The Court notes that other prison systems have provided exemptions to permit the ritualistic use of tobacco even when the institution otherwise bans tobacco completely. The Federal Bureau of Prisons religious policy permits "the ritual use of tobacco." *See* Federal Bureau of Prisons, Program Statement: Religious Beliefs and Practices, Statement P5360.09 12/31/2004, at 20(I)-(j) (directing

each institution to develop supplement which must include procedures for "using tobacco for rituals"): http://www.bop.gov/policy/progstat/5360_009.pdf. And as noted above, other prison systems have offered accommodations that include mixtures including tobacco. The First Circuit has found such evidence relevant (though not necessarily conclusive) in analyzing whether prison officials have considered less restrictive alternatives. *See Spratt,* 482 F.3d at 42 ("in the absence of any explanation by [the Rhode Island DOC] of significant differences [between the prison systems] ..., the Federal Bureau of Prisons policy suggests that some form of inmate preaching would be permissible without disturbing prison security").

Thus, the Court recommends granting summary judgment in favor of the defendants to the extent that Cryer seeks unrestricted access to tobacco, but otherwise denying summary judgment on the limited request to have access to ceremonial tobacco during corporate ceremonies. The Court recommends that summary judgment be denied on this more narrowly circumscribed claim without prejudice to renewal once the district court judge to whom this case is assigned has set a schedule for dispositive motions to be filed.

### b. *Federal Constitutional Claims Pursuant to 42 U.S.C. § 1983*

#### i. *Official Capacity Immunity*

■ As noted, in addition to injunctive and declaratory relief, Cryer seeks mone-

---

7. The First Circuit has further qualified this requirement as follows:

It is important to note that we do not construe RLUIPA to 'require prison administrators to refute every conceivable option in order to satisfy the least restrictive means prong of RFRA *Hamilton v. Schriro,* 74 F.3d 1545, 1556 (8th Cir.1996). However, to meet the least restrictive means test, pris-

on administrators generally ought to explore at least some alternatives, and their rejection should generally be accompanied by some measure of explanation. A blanket statement that all alternatives have been considered and rejected, such as the one here, will ordinarily be insufficient.
*Spratt v. Rhode Island Dept. of Corrections,* 482 F.3d 33, 41 n. 11 (1st Cir.2007).

tary damages against the Department of Corrections and the various defendants in both their official and individual capacities. In addition to seeking summary judgment on the merits of the claims asserted under the First, Eighth, and Fourteenth Amendments, the defendants move for summary judgment on Cryer's section 1983 claims to the extent that he seeks money damages against the DOC and the defendants in their official capacities. (*See* # 76 at 12–13) The Eleventh Amendment bars suits against a state and its agents in their official capacity, absent an express waiver of immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65–67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "It is settled law that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Johnson v. Board of Bar Overseers of Mass.*, 324 F.Supp.2d 276, 286 (D.Mass.2004) (internal quotation marks and citation omitted). "The Commonwealth has not consented to being sued for money damages in either the federal courts or in its own courts under § 1983." *Hudson v. Maloney*, 326 F.Supp.2d 206, 213 (D.Mass.2004) (citation omitted). Accordingly, the Court recommends that summary judgment be granted in favor of the defendants on all federal constitutional claims for damages against the Department of Corrections, and the individual defendants named in their official capacity. The remaining questions, taken up below, are whether summary judgment is war-

ranted to the extent that Cryer seeks prospective relief on the federal constitutional claims, and whether qualified immunity precludes monetary damages against the defendants in their individual capacity.

### ii. Eighth Amendment and Equal Protection Claims

The defendants move for summary judgment to the extent that Cryer alleges that the DOC policy violates his Eighth Amendment right to be free from cruel and unusual punishment and the Equal Protection Clause of the Fourteenth Amendment; they argue that Cryer cannot satisfy the relevant standards under each claim. The Court agrees that summary judgment is warranted, but for a different reason: the factual bases for these claims merely duplicate the claims based on RLUIPA and the First Amendment, and Cryer gains nothing by asking the Court to analyze these claims under different constitutional labels. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir.2005) (although complaint included equal protection and Eight Amendment claims related to plaintiff's Fast of Ramadan claim, "the free-exercise claim arises under the First Amendment and gains nothing by attracting additional constitutional labels") (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (stating that the "explicit textual source of constitutional protection ... must be the guide for analyzing [the constitutional] claims")).[8] For this

---

**8.** Otherwise, the Court simply notes that it has found no case law holding that a prison policy banning tobacco use violates the Eighth Amendment. *See, e.g., Nowaczyk v. Shaheen*, 99–351–M, 2001 WL 274790, at \*4 (D.N.H. Jan. 18, 2001) (prison's ban on tobacco use and possession does not violate Eighth Amendment); *Adams v. Mosley*, 05–352, 2008 WL 4369246, at \*\*9–10 (M.D.Ala. Sept. 25, 2008); *Muff v. Collins*, 08–cv–1027, 2009 WL 233561, at \*\*1–2 (S.D.Ohio Jan. 29, 2009)

(same); *Gresham v. Granholm*, 09–cv–11, 2009 WL 497666, at \*\*5–6 (W.D.Mich. Feb. 25, 2009) (prison ban on tobacco smoking violates neither Eighth Amendment nor equal protection); *Beauchamp v. Sullivan*, 21 F.3d 789, 790–791 (7th Cir.1994) (stating that "with the Supreme Court having just held that prison officials may have a constitutional duty to protect inmates from high levels of ambient cigarette smoke ... a prison could hardly be thought to be violating the Constitu-

reason, the Court recommends granting summary judgment in favor of the defendants on the claim that the prison policy forbidding the use and possession of smoking violates the Eighth Amendment and the Equal Protection Clause. The claim rises or falls as a Free Exercise claim.

### iii. The First Amendment

■■ " 'In the First Amendment context ... a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.' " *Hudson*, 326 F.Supp.2d at 210 (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (reiterating standard). The *Turner* Court enumerated four factors to consider in analyzing the reasonableness of the prison regulation or policy at issue: 1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it" and whether the prison restriction "operate[s] in a neutral fashion, without regard to the content of the expression"; 2) "whether there are alternative means of exercising the right that remain open to prison inmates"; 3) whether the "accommodation of the asserted constitutional right will have [an impact] on guards and other inmates, and on the allocation of prison resources generally"; and 4) whether there are "ready alter-

natives" to the prison regulation, and whether "an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 89–91, 107 S.Ct. 2254 (internal quotation marks and citations omitted).

Here, at least to the extent that Cryer seeks an accommodation permitting him unfettered access to ceremonial prayer tobacco, the DOC has stated a legitimate interest in safeguarding the health of its inmates, and in ensuring that tobacco does not become fodder for black market trade; the policy is applied neutrally without regard to the content of expression; and the DOC has identified "alternative means of exercising the right" in that Cryer, in addition to the other ways in which he may practice his Native American religion, is permitted to smudge once a month using kinnick-kinnick. To the extent that Cryer requests an accommodation to be able to smudge daily—whether outdoors or in his cell—summary judgment is warranted: the prison has sufficiently explained (and Cryer does not dispute) that supervising the smudging ceremony drains staff resources. Further, the security implications of permitting Native American inmates to use and possess ceremonial tobacco in their cells is obvious.

Even so, Cryer has "point[ed] to an alternative" that he suggests can accommodate his rights "at *de minimis* cost to valid penological interests," *viz.*, that he be permitted to use ceremonial tobacco during the monthly smudging ceremony when the risk of exposing other inmates to second-hand smoke is absent and the prison has already dedicated staff to supervising the smudging ceremony. Because the

tion by restricting smoking") (citing *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125

L.Ed.2d 22 (1993)).

present motion for summary judgment came as a cross-motion for summary judgment, the defendants have not replied to Cryer's response to their motion for summary judgment on this claim. At this juncture, then, the Court recommends that the defendants' motion for summary judgment on the merits of this claim—to the extent that Cryer posits that using ceremonial tobacco during the once-monthly smudging ceremony can accommodate his religious expression—be denied, without prejudice to renewal after the deadline for dispositive motions has been set. Furthermore, disposition of Cryer's RLUIPA claim may well obviate the need to address the constitutional question. RLUIPA affords greater protection to religious exercise than does the First Amendment: if Cryer prevails on the RLUIPA claim, the Court need not consider the constitutional question further; if he does not, denial of his RLUIPA claim necessarily precludes relief on First Amendment grounds.

Withal, the argument for summary judgment on qualified immunity grounds is strong, even on this narrow point. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The qualified immunity analysis has two parts. A court must decide whether the facts shown by the plaintiff make out a violation of a constitutional right and whether the right was 'clearly established' at the time of the alleged violation by the defendant." *Cortes–Reyes v. Salas–Quintana,* 608 F.3d 41, 51 (1st Cir.2010) (citing *Pearson,* 129 S.Ct. at 815–16). In *Pearson v. Callahan, supra,* the Supreme Court held that courts are no longer required to determine whether a plaintiff's constitutional rights were violated before proceeding to an analysis of whether the constitutional rights at issue were clearly established at the time of the alleged violation. *Pearson,* 129 S.Ct. at 818 ("There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."). Here, the Court readily concludes that summary judgment is warranted in favor of the defendants on qualified immunity grounds.

■ "The law is 'clearly established' if courts have ruled that 'materially similar conduct was unconstitutional,' or if there is a previously identified general constitutional principle that applies 'with obvious clarity to the specific conduct at issue.'" *Cortes–Reyes,* 608 F.3d at 52 (quoting *Jennings v. Jones,* 499 F.3d 2, 16 (1st Cir. 2007), *cert. denied,* 552 U.S. 1170, 128 S.Ct. 1125, 169 L.Ed.2d 957 (2008)); *Giragosian v. Bettencourt,* 614 F.3d 25, 29 (1st Cir. 2010) ("A right is 'clearly established' if, at the time of the alleged violation, '[t]he contours of the right … [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'") (quoting *Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir.2009) (further citation and quotation marks omitted)).

■ The plaintiff bears the burden of establishing that the law was clearly established. *Cortes–Reyes,* 608 F.3d at 52. "Here, it is important not to confuse the general with the particular and to frame the issue precisely.... [A] reasonable official would have known that a prisoner's right to the free exercise of his religion, so long as it did not compromise institutional security, was clearly established.... Rather, the precise question that would have to

be asked is whether the law had clearly established a [Native American] inmate's right to [use ceremonial tobacco]...." *Hudson,* 326 F.Supp.2d at 211. Cryer has not identified clearly established law conferring a constitutional right to use ceremonial tobacco; he refers only to the First Amendment's general guarantee protecting the free exercise of religion, and to Mass. Gen. L. Ch. 270 § 22(c)(8). (*See* # 77 at 2, 7) Further, a review of the decisions addressing bans on tobacco smoking and possession in prisons shows that prison officials have enjoyed wide constitutional berth in limiting Native American's access to tobacco. *See, e.g., Morrison v. Cook,* 97–57–ST, 1999 WL 717218, at *9 (D.Or. April 27, 1999) (policy restricting tobacco use to Native American corporate ceremonies reasonable under the First Amendment and *Turner* test); *Smith v. Beauclair,* 03–222–C–EJL, 2006 WL 2348073, at *9 (D.Idaho Aug. 11, 2006) (policy prohibiting smudging and request to burn and smoke tobacco in individual cells not violative of First Amendment or RLUIPA); *Skenandore,* 2006 WL 2587545, at **4, 13 (policy prohibiting inmate, a member of Oneida Tribe of Indians, from smoking tobacco and smudging in cell not violative of First Amendment or RLUIPA, where inmates may smoke tobacco during monthly sweat lodge ceremony). More important, the Court has identified no case that would lead a reasonable prison official to conclude that Native American inmates had a clearly established right to possess and smoke tobacco. For these reasons, the Court recommends that the defendants' motion for summary judgment on the First Amendment claim be granted on qualified immunity grounds.

Thus, the sole remaining issue is whether Cryer is entitled to prospective relief on his First Amendment claim that he be permitted to use ceremonial tobacco during regularly scheduled outdoor ceremonies.

### 2. State Law Claims

#### a. Cryer's Motion for Partial Summary Judgment under Mass. Gen. L. Ch. 270 § 22(c)(8) and Mass. Gen. L. Ch. 30A.

In his motion for partial summary judgment (# 70), Cryer argues that the DOC policy runs afoul of Massachusetts statutory law, *viz.,* Mass. Gen. L. Ch. 270 § 22(c)(8), and the Massachusetts Administrative Procedure Act, Mass. Gen. L. Ch. 30A. As both of these claims lack merit, the Court recommends denying Cryer's partial motion for summary judgment, and granting summary judgment in favor of the defendants.

The DOC originally introduced the inmate smoking policy on September 2, 1996, following settlement of a suit brought by nonsmoking prison inmates that alleged that continual exposure to second-hand tobacco smoke was harmful to their health. (*See* # 70, Exh. C. at 1) As originally formulated, the DOC policy banned smoking in enclosed spaces, but stated that inmates "may be permitted to smoke outdoors and in designated smoking areas, approved by the Commissioner...." (# 70, Exh. C at 3); *see also Lemay v. Dubois,* 1996 WL 914061, at *1 (Mass.Super. Sept. 16, 1997) (describing class action suit). The DOC has since adopted a policy that prohibits inmates from possessing or using tobacco products on all DOC property. The DOC has adopted a similar policy prohibiting DOC employees from possessing or using tobacco.

■ Cryer first contends that the smoking ban violates Mass. Gen. L. Ch. 270, § 22(c)(8). This contention is without merit. The Supreme Judicial Court has

described the background to the current legislation as follows:

> In 2004, the Legislature rewrote the then-existing anti-smoking legislation, G.L. c. 270, § 22, substantially expanding the reach of that statute to 'protect the health of the employees of the commonwealth.' St.2004, c. 137, preamble. Compare G.L. c. 270, § 22, as appearing in St.2004, c. 137, § 2, with G.L. c. 270, § 22, as amended through St.1997, c. 85. The 2004 smoke-free workplace law mandated a 'smoke free environment for all employees working in an enclosed workplace.' G.L. c. 270, § 22(b)(1). To that end, the 2004 statute 'prohibited' smoking in all workplaces, private and public. The 2004 legislation further provided that smoking *'may* be permitted' in nine specifically enumerated 'places and circumstances, G.L. c. 270, § 22(c).

*American Lithuanian Naturalization Club, Athol, Mass., Inc. v. Board of Health of Athol,* 446 Mass. 310, 313–314, 844 N.E.2d 231, 235 (2006) (footnotes omitted). As the basis for summary judgment, Cryer suggests that the inmate smoking policy is contrary to that part of the statute that states that "smoking may be permitted" in "[r]eligious ceremonies where smoking is part of the ritual." Mass. Gen. L. Ch. 270, § 22(c)(8). This language, however, is permissive, not mandatory. The DOC's policy does not contravene the statute, which confers no rights or entitlements.

■■■■■ Cryer also contends that the DOC Policy contravenes the Massachusetts Administrative Procedure Act, Mass. Gen. L. Ch. 30A,[9] in that it was not promulgated in accordance with the notice and hearing provisions of the Act. He points to the defendants' answer to an interrogatory, in which the defendants state that "the DOC's inmate smoking policy is not a regulation promulgated under M.G.L. c. 30A." (# 70, Exh. B at 9) To the extent that Cryer contends that the DOC was required to promulgate a regulation governing its smoking policy, this contention lacks merit. " 'It is a recognized principle of administrative law that an agency may adopt policies through adjudication as well as through rulemaking,' " *Hastings v. Commissioner of Correction,* 424 Mass. 46, 49, 674 N.E.2d 221, 223–224 (1997) (quoting *Arthurs v. Board of Registration in Medicine,* 383 Mass. 299, 312–313, 418 N.E.2d 1236, 1246 (1981)), and that "[p]olicies announced in adjudicatory proceedings may serve as precedents for future cases," *Arthurs,* 383 Mass. at 313, 418 N.E.2d at 1246 (citations omitted). Here, the DOC Policy was originally and properly adopted following settlement of a class action suit. To the extent that Cryer contends that the original policy somehow conferred an entitlement to smoke outdoors, he is mistaken. The original policy left to the discretion of the Commissioner whether or where inmates may smoke outdoors. The current policy reflects the Commissioner's discretionary judgment that smoking may not be permitted anywhere on DOC property.

■■■■■ Further, "[t]he Administrative Procedure Act does not require an agency to promulgate regulations. Rather, it specifies the procedures to be used in promulgating regulations *otherwise required."* *Tedford v. Massachusetts Housing Finance Agency,* 390 Mass. 688, 694, 459 N.E.2d 780, 784 (1984) (emphasis added). The DOC's enabling statute mandates in general terms that the Commissioner of Corrections "maintain security, safety and order," Mass. Gen. L. Ch. 124 § 1(b), and "establish and enforce standards for all

---

9. Cryer did not assert a claim under the Administrative Procedure Act in his complaint. The Court does not dwell on this omission because the claim lacks merit.

state correctional facilities," *id.* § 1(c). The statute further directs the commissioner to "make and promulgate necessary rules and regulations incident to the exercise of his powers and the performance of his duties including but not limited to rules and regulations regarding nutrition, sanitation, safety, discipline, recreation, religious services, communication and visiting privileges, classification, education, training, employment, care, and custody for all persons committed to correctional facilities." *Id.* § 1(q). The statute is thus cast in general terms, and does not require promulgation of a specific rule or regulation governing smoking policy.

b. *The Defendants' Motion for Summary Judgment under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. L. Ch. 12, §§ 11(H) & 11(I), Art. 2 of the Massachusetts Declaration of Rights, and Mass. Gen. L. Ch. 127, § 88*

The defendants move for summary judgment on Cryer's remaining state-law claims anent the DOC policy. Cryer has not specifically addressed the defendants' arguments in his response. The Court concludes, however, that certain of these claims fail as a matter of law.

i. *Mass. Gen. L. Ch. 12, §§ 11(H) & 11(I)*

"In order to establish a claim under the [MCRA], plaintiff must prove that: '(1) his exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference ... was by threats, intimidation or coercion.' " *Shaheed–Muhammad v. Dipaolo,* 393 F.Supp.2d 80, 93 (D.Mass.2005) (quoting *Columbus v. Biggio,* 76 F.Supp.2d 43, 54

(D.Mass.1999)). The Supreme Judicial Court has said that "[n]ot every violation of law is a violation of the State Civil Rights Act. A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act." *Longval v. Commissioner of Correction,* 404 Mass. 325, 333, 535 N.E.2d 588, 593 (1989) (citing *Pheasant Ridge Assocs. Ltd. Partnership v. Burlington,* 399 Mass. 771, 781, 506 N.E.2d 1152, 1159 (1987)). The Supreme Judicial Court has further defined a "threat" as "involv[ing] the intentional exertion of pressure to make another fearful or apprehensive of injury or harm," *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 474, 631 N.E.2d 985, 990, *cert. denied,* 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 122 (1994); "coercion" as "the active domination of another's will," *id.* (internal quotation marks and citation omitted); and "intimidation" as "putting in fear for the purpose of compelling or deterring conduct," *id.*

Cryer has pointed to nothing in the record to suggest even remotely that a genuine dispute of fact exists on the question whether the defendants interfered with his rights "by threats, intimidation or coercion." Summary judgment on this claim is therefore warranted. *Cf. Rasheed v. Commissioner of Correction,* 446 Mass. 463, 475, 845 N.E.2d 296, 308 (2006) (summary judgment warranted where "record was devoid of facts demonstrating any cognizable threats, intimidation, or coercion applied in connection with the challenged policies").

ii. *Article 2 of Massachusetts Declaration of Rights*

Cryer alleges that prohibiting his access to ceremonial tobacco abridges his rights under Art. 2 of the Massachusetts Declaration of Rights. "The Massachusetts Con-

stitution broadly protects the rights of individuals to exercise their religious beliefs freely. Article 2 of the Massachusetts Declaration of Rights ensures that no person 'shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping GOD in the manner and season most agreeable to the dictates of his own conscience, or for his religious profession or sentiments.'" *Rasheed,* 446 Mass. at 466, 845 N.E.2d at 301–302. The SJC has adopted a "compelling interest" standard that tracks the standard enunciated in RLUIPA. *See id.* at 467, 845 N.E.2d at 302–303; *Shaheed–Muhammad,* 393 F.Supp.2d at 100–101. Thus, the analysis set forth above, *supra* Section III B1a, is equally applicable here, and for the reasons stated above, the Court recommends denying summary judgment to the extent that Cryer requests that he be allowed access to ceremonial tobacco during the monthly smudging ceremony, but otherwise granting summary judgment.

### iii. Claim under Mass. Gen. L. Ch. 127, § 88

Mass. Gen. L. Ch. 127, § 88 provides that "[a]n inmate of any prison or other place of confinement shall not be denied the free exercise of his religious belief and the liberty of worshipping God according to the dictates of his conscience in the place where he is confined." "In interpreting M.G.L. c. 127, § 88, courts have adopted a reasonable relationship test that matches the federal constitutional standard," *Shaheed–Muhammad,* 393 F.Supp.2d at 102, set out in *O'Lone v. Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). For the reasons set out above under the analysis of Cryer's

First Amendment claim, *supra* Section IIIB 1biii, the Court recommends granting summary judgment to the extent that Cryer seeks unlimited access to ceremonial tobacco, but otherwise denying summary judgment to the extent that Cryer requests once-monthly access to ceremonial tobacco.

### iv. Massachusetts Tort Claims Act, Mass. Gen. L. Ch. 258, § 4

Finally, Cryer has asserted a claim of negligence against the defendants under the Massachusetts Tort Claims Act, ("MTCA"), Mass. Gen. L. Ch. 258, § 4. (*See* # 1 at 1) The defendants correctly point out that the Commonwealth has not waived its Eleventh Amendment immunity to suit in federal court. *See Caisse v. DuBois,* 346 F.3d 213, 218 (1st Cir.2003). Thus, the Court recommends granting summary judgment in favor of the defendants to the extent that Cryer seeks to sue the Commonwealth and the individuals in their official capacity under the MTCA.[10]

### v. Claims under 103 C.M.R. 471 and 103 C.M.R. 403.10(9)

In his complaint, Cryer purports to state a claim based on violations of certain prison policies. (# 1 at 1, 5) The defendants seek summary judgment, arguing that the state regulations confer no independent private right of action. True enough: the cases cited in their memorandum of law stand for the proposition that a claim for damages against the individual defendants cannot be read into the prison regulations themselves. *See Martino v. Hogan,* 37 Mass.App.Ct. 710, 720–721, 643 N.E.2d 53, 60 (1994) (breach of regulations cannot be

---

**10.** The defendants, perhaps by omission, have not moved for summary judgment on Cryer's individual-capacity claims against the DOC defendants, and the Court does not consider the issue here. *See Caisse v. DuBois,* 346

F.3d 213, 218 (1st Cir.2003) (Massachusetts "Tort Claims Act shields public employees from personal liability for negligent conduct").

fairly read "in themselves [as] establishing a rule of personal liability of officials", *rev. denied,* 419 Mass. 1106, 646 N.E.2d 1070 (1995) (Table)). However, "[o]nce an agency has seen fit to promulgate regulations, it must comply with those regulations," *Royce v. Commissioner of Correction,* 390 Mass. 425, 427, 456 N.E.2d 1127, 1128 (1983), and a plaintiff-inmate could be entitled to equitable relief for failure of prison officials to comply with its own regulations, *id.* at 430, 456 N.E.2d at 1130. *See also Kenney v. Commissioner of Correction,* 393 Mass. 28, 34, 468 N.E.2d 616, 620 (1984). Neither party has fleshed out the contours of the merits of any claim stemming from the regulations themselves, but the Court agrees that summary judgment is warranted to the extent the defendants contend, as a matter of law, that they are not subject to money damages under the regulations *qua* regulations.

### IV. Conclusion

For the foregoing reasons, the Court RECOMMENDS that:

1. The defendants' Motion for Summary Judgment be ALLOWED under the RLUIPA to the extent that the plaintiff seeks unrestricted access to ceremonial tobacco, but DENIED without prejudice to renewal to the extent that the plaintiff seeks access to ceremonial tobacco during the once-monthly smudging ceremony.

2. The defendants' Motion for Summary Judgment be ALLOWED on the plaintiff's challenge to the DOC policy with respect to claims brought under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment.

3. The defendants' Motion for Summary Judgment be ALLOWED on the plaintiff's First Amendment challenge to the DOC policy with respect to official capacity claims for money damages, but DENIED with respect to claims for declaratory and injunctive relief to the extent that the plaintiff seeks access to ceremonial tobacco during the once-monthly smudging ceremony. The Court further recommends that the motion be ALLOWED on the First Amendment claim on qualified immunity grounds.

4. The plaintiff's Motion for Partial Summary Judgment be DENIED on the plaintiff's state law claims under Mass. Gen. L. Ch. 22(c)(8) and Mass. Gen. L. Ch. 30A, and summary judgment be GRANTED in favor of the defendants.

5. The defendants' Motion for Summary Judgment be ALLOWED under the Massachusetts Civil Rights Act, Mass. Gen. L. Ch. 12, §§ 11(H) & 11(I).

6. The defendants' Motion for Summary Judgment be ALLOWED in part under Art. 2 of the Massachusetts Declaration of Rights to the extent that the plaintiff seeks unlimited access to ceremonial tobacco, but DENIED to the extent that the plaintiff seeks access to ceremonial tobacco during the once-monthly corporate ceremony.

7. The defendants' Motion for Summary Judgment be ALLOWED in part under Mass. Gen. L. Ch. 127, § 88, to the extent that the plaintiff seeks unlimited access to ceremonial tobacco, but DENIED to the extent that the plaintiff seeks access to ceremonial tobacco during the once-monthly corporate ceremony.

8. The defendants' Motion for Summary Judgment be ALLOWED under the Massachusetts Tort Claims Act, Mass. Gen. L. Ch. 258, § 4, to the extent that Cryer seeks to sue the Commonwealth and the individual defendants in their official capacity.

9. The defendants' Motion for Summary Judgment be ALLOWED under 103 C.M.R. 471 and 103 C.M.R. 403.10(9), to the extent that the plaintiff

seeks monetary damages under the regulations.

## V. Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).